IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN GARTY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 04-1739 |

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Susan Garty ("plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq.*, and Supplemental Social Security ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381, *et seq.* Plaintiff contends that the decision of the administrative law judge (the "ALJ") that she is not disabled, and therefore not entitled to benefits, should be reversed because the decision is not supported by substantial evidence and that the case should be remanded for the ALJ to consider properly all the evidence as presented. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny plaintiff's motion and grant defendant's motion because the decision of the ALJ is supported by

substantial evidence.

## *Procedural History*

Plaintiff filed the applications at issue in this appeal on a protective basis on April 16, 2003 asserting a disability since November 15, 2000 by reason of mental health issues including panic attacks, anxiety, depression, and insomnia. (R. at 84-93.)[1] She was denied at the initial level (R. at 208-11 (SSI); R. at 66-69 (DIB)) and then filed a request for a hearing. (R. at 70.) On May 27, 2004 a hearing was held before the ALJ. Plaintiff appeared at the hearing and testified. (R. at 37, 40-58.) Plaintiff was represented by an attorney at the hearing (R. at 37.) In a decision dated July 16, 2004, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits. (R. at 17-26.) Plaintiff timely requested a review of that determination and by letter dated October 8, 2004 the Appeals Council denied the request for review. (R. at 8-11.) Plaintiff subsequently commenced the present action seeking judicial review.

## *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir.

---

[1] Plaintiff and defendant characterize the applications as relating to her mental health issues only.

1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence*

Plaintiff was 52 years old at the time of the hearing before the ALJ.  (R. at 38.)  She is divorced and resided alone in her own home at the time of the hearing, but testified that she was concerned about losing her home to foreclosure in the near future.  (R. at 40, 50.)  She was receiving welfare assistance at the time of the hearing.  (R. at 40-41.)  Plaintiff has an eleventh grade education.  (R. at 40.)  She has past work experience as a cleaner, a window blind assembler, and a laundry press operator.  (R. at 41-42.)  There is no indication in the record that she has engaged in any substantial gainful activity at any time since the alleged onset date.  (R. at 18, 41.)

Plaintiff suffers primarily from mental health issues including depression, anxiety disorder, panic disorder, and insomnia.  (R. at 42.)[2]  There are indications in the record that she is

---

[2]Plaintiff tested positive for Hepatitis C but was asymptomatic at the time of the hearing. (R. at 42.)  There is some indication in the record that plaintiff suffers from anorexia nervosa. (R. at 188.)  Plaintiff is reportedly five feet tall.  (R. at 51, 84.)  Plaintiff reportedly weighed 92 pounds when admitted to the emergency room on one occasion and reportedly weighed 98 pounds on April 16, 2003 when she filled out her disability report adult worksheet.  (R. at 51,

agoraphobic and suffers from some paranoid behavior.  (R. at 154, 177, 179.)  Plaintiff has taken Temazepam (Restoril®), Clonazepam , Paxil®, and Ambien® to treat her mental health issues.  (R. at 117, 123, 148.)  In addition, she has a history of heroin use and was receiving methadone from a clinic three times a week at the time of the hearing.  (R. at 18, 43.)  Her substance abuse disorder appeared to have been in remission for approximately two to four years at the time of the hearing.  Id.  The ALJ determined that because plaintiff's substance abuse disorder appeared to be in complete remission it is not a material factor in the case.  (R. at 18.)

Plaintiff reported that she has suffered from panic attacks since 1991 which began when her husband left her.  (R. at 123.)  Progress notes from plaintiff's primary care physician, Dr. Frank E. Sessoms, M.D., covering the period from November 11, 2002 through September 18, 2003, indicate that plaintiff suffers from depression and anxiety, has a history of panic and anxiety attacks, and complained of having difficulty sleeping.  (R. at 147-50.)  Dr. Sessoms' notes further indicate that plaintiff was taking Paxil, Klonopin, and Ambien for relief.  (R. at 147-50.)

Consulting physicians' reports corroborate Dr. Sessoms' diagnoses.  Dr. Sharon R. Wilson, Ph.D., conducted a mental status evaluation on plaintiff in July 2003 and diagnosed plaintiff with panic disorder, depression, and heroin addiction and noted that plaintiff suffers from "some panic and anxiety symptoms and some depression."  (R. at 123-26.)   Dr. Manella Link, Ph.D., with respect to the medical portion of plaintiff's disability determination, examined the affective disorders (12.04), anxiety-related disorders (12.06), and substance addiction

---

84.)  Plaintiff was diagnosed with anorexia by the emergency medical staff.  (R. at 189, 191.)  Plaintiff's attorney and the ALJ agreed at the hearing that this case is essentially a mental health case.  (R. at 42.)

disorders (12.09) categories in determining that the medically determinable impairments of depressive disorder, anxiety disorder, and former heroin addiction were present but did not satisfy the diagnostic criteria and a residual functional capacity assessment was necessary. (R. at 134-45.) Dr. Link therefore performed a mental residual functional capacity assessment of plaintiff on September 9, 2003 and found that plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation were not significantly limited or were moderately limited based upon twenty specific mental activities that were rated. (R. at 130-31.) Dr. Link determined that her assessment was consistent with Dr. Wilson's opinions and that the plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (R. at 132.) Dr. Link determined that plaintiff's functional limitations were mild with respect to activities of daily living, moderate with respect to difficulties with social functioning, moderate with respect to difficulties maintaining concentration, persistence, or pace, and that there was insufficient evidence to determine limitations with respect to repeated episodes of decompensation. (R. at 143.) In addition, Dr. Richard Rydze, M.D., performed a consultative examination of plaintiff on October 23, 2003 and indicated his impressions that plaintiff suffered from panic disorder with some paranoid behavior, a history of drug abuse, and perhaps liver disease. (R. at 151-54.)

      Plaintiff's treatment records from Staunton Clinic, where she received counseling and therapy, indicate that plaintiff first began receiving therapy there on February 16, 2004 and that she was scheduled for biweekly appointments. (R. at 172.) The Staunton Clinic records indicate that plaintiff suffered from depressive disorder, panic disorder, excessive worry, intrusive thoughts, and agoraphobia. (R. at 172-83). Two assessment forms completed on April 21, 2004

by her counselor / adult psychotherapist at Staunton Clinic, Tim Gigliotti, LPC ("Licensed Professional Counselor"), indicate his assessment that plaintiff's abilities to make occupational adjustments and performance adjustments are seriously limited, poor, or nonexistent and that plaintiff suffers overwhelming anxiety and symptoms including sleep disturbance; mood disturbance; emotional lability; substance dependence; recurrent panic attacks; anhedonia or pervasive loss of interests; paranoia or inappropriate suspiciousness; difficulty thinking or concentrating; oddities of thought, perception, speech or behavior; social withdrawal or isolation; decreased energy; persistent irrational fears; generalized persistent anxiety, hostility and irritability; excessive worry; and intrusive thoughts.  (R. at 169-71; 172-73.)  Mr. Gigliotti indicated that plaintiff's functional limitations include "marked" restriction of activities of daily living, difficulties maintaining social functioning, and deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner.  (R. at 173.)

      Medical records show that plaintiff was admitted by the emergency department of Ohio Valley General Hospital on April 28, 2004 complaining of not feeling well, inability to eat or sleep, and extreme anxiety.  (R. at 188).  The emergency medical staff noted plaintiff's past medical history of panic attacks, anxiety, and depression, and diagnosed plaintiff with anorexia, anxiety, and depression.  (R. at 188-89).  A form issued to plaintiff upon release by the emergency medical staff instructed plaintiff that the "doctor thinks your symptoms may be due to: ANOREXIA" and instructed plaintiff to follow-up with her primary care physician Dr. Sessoms and her counselor / psychotherapist Mr. Gigliotti.  (R. at 195).

*Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. § 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in

the evaluation process.  Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on November 15, 2000; (2) plaintiff suffers from depressive disorder, anxiety disorder, panic disorder, and a history of substance abuse in remission, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) plaintiff can return to past relevant work.  (R. at 25-26.)  Accordingly the ALJ found that plaintiff was not disabled.  (R. at 26.)

On appeal plaintiff argues that the ALJ did not give adequate consideration to the limitations imposed by plaintiff's psychological impairments, the opinions of treating sources confirming these symptoms, and plaintiff's credible testimony regarding these limitations.  In particular, plaintiff argues that (1) the ALJ improperly dismissed the reports and treatment records of plaintiff's treating psychotherapist in favor of the opinions of the examining consultative physicians and plaintiff's primary care physician; (2) the ALJ erred in discrediting plaintiff's subjective testimony that was corroborated by competent medical evidence; and (3) the ALJ failed to incorporate all of plaintiff's credible limitations in the hypothetical posed to the vocational expert.  The court addresses each of these issues in turn.

***I. Whether the ALJ improperly dismissed the treating psychotherapist's opinion in favor of the opinions of the examining consultative physicians and plaintiff's primary care physician***

The Commissioner in her brief argues that the ALJ properly evaluated plaintiff's treating psychotherapist Mr. Gigliotti's opinion for two reasons.  First, the Commissioner argues that a

counselor [or therapist] is not an "acceptable medical source" and a counselor's [or therapist's] opinion therefore cannot serve as a basis for determining that a claimant is eligible for benefits. Second, the Commissioner argues that the ALJ found that Mr. Gigliotti's opinion was inconsistent with the other substantial evidence of record including the opinions of acceptable medical sources Drs. Sessoms, Wilson, Tydze, and Link as well as the treatment records of Dr. Sessoms. On both counts, defendant is correct.

Under applicable precedent of the United States Court of Appeals for the Third Circuit, a counselor's opinion, like that of a chiropractor, cannot serve as an acceptable medical source entitled to controlling weight. Hartranft v. Apfel, 181 F.3d 358, 361-62 (3d Cir. 1999) (citing 20 C.F.R. § 416.913(a) — applicable to SSI — for the list of "acceptable medical sources" for the purposes of medical evidence of impairments).[3] While "licensed or certified psychologists" count as "acceptable medical sources" under the regulations, counselors or therapists do not. See 20 C.F.R. § 416.913(d)(1) (identifying "therapists" as other medical sources not listed in § 416.913(a)). A counselor's opinion, however, can be considered, along with all of the other evidence that a claimant may present, insofar as it is deemed relevant to assessing a claimant's disability. See 20 C.F.R. § 416.913(d)(1) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . . . Other sources include, but are not limited to, (1) Medical sources not listed in paragraph (a) of this section (for example, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and *therapists*) . . . .") (emphasis added).

---

[3] 20 C.F.R. § 404.1513 applicable to DIB contains the same provisions.

Here, Mr. Gigliotti's opinion, the opinion of a "licensed professional counselor" or therapist, is not entitled to controlling weight. Moreover, where as here the opinions of multiple physicians whose opinions are deemed acceptable medical sources failed to corroborate Gigliotti's opinion of the extent of plaintiff's disability, substantial evidence supports the ALJ's decision not to accept the assessment of plaintiff made by Mr. Gigliotti on April 21, 2004. (R. at 24.) The ALJ explained that "Mr. Gigliotti's assessment is inconsistent with the opinions of the examining consultative physicians Dr. Wilson and Dr. Rydze as well as the claimant's treating physician, Dr. Sessoms." Id. For example, the ALJ noted that while Dr. Wilson indicated that plaintiff had limitations relating to her ability to relate to others, she reported that plaintiff had no problem communicating, that she was able to sustain attention to perform simple repetitive tasks, and that she was able to understand, retain and follow instructions. Id.

The ALJ also considered the medical evidence given by Dr. Link, a state agency psychologist, regarding plaintiff's residual functional capacity. (R. at 21.) In addition, the ALJ noted that Mr. Gigliotti's assessment on April 21, 2004 is not wholly consistent with his treating records for plaintiff at the Staunton Clinic. While Mr. Gigliotti in his assessment indicated that the plaintiff was seriously limited in her ability to make occupational, performance, and personal-social adjustments, certain treatment records from the Staunton Clinic where Mr. Gigliotti worked show that plaintiff was reportedly sleeping better and that her panic attacks were less intense and that plaintiff's global assessment of functioning score ("GAF") as assessed by Mr. Gigliotti at various times during treatment was in the moderate range. Id. The ALJ noted that Mr. Gigliotti assessed plaintiff's GAF score to be 59; plaintiff was also assessed to have scores

10

of 56 and 65 during the past year. (R. at 172, 177.) [4] The ALJ also noted that though Mr. Gigliotti indicated plaintiff was "seriously limited" in several respects, he reported that plaintiff was capable of managing her own benefits. (R. at 22.) The ALJ, therefore, properly evaluated the conflicting opinions of the consulting and treating sources of record. While plaintiff argues that the ALJ failed to point to contradictory medical evidence on the record to discredit Mr. Gigliotti's opinions and that the ALJ attempted to discredit his reports by referencing piecemeal segments of the record, the decision of the ALJ shows that substantial evidence supports the ALJ's decision to credit the weight of the medical evidence of record and not accept Mr. Gigliotti's assessment of the degree of severity of plaintiff's impairments.

### II. Whether the ALJ erred in discrediting plaintiff's subjective testimony

Plaintiff argues that the ALJ erred in discrediting plaintiff's subjective testimony

---

[4]As explained in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994):

> The reporting of overall functioning … is done using the Global Assessment of Functioning (GAF) Scale. The GAF Scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning.… In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care.

Id. at 30. A GAF score in the 51 to 60 range indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id. at 34. A GAF score in the 61 to 70 range indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but such an individual is "generally functioning pretty well, has some meaningful interpersonal relationships." Id.

of 56 and 65 during the past year. (R. at 172, 177.) [4] The ALJ also noted that though Mr. Gigliotti indicated plaintiff was "seriously limited" in several respects, he reported that plaintiff was capable of managing her own benefits. (R. at 22.) The ALJ, therefore, properly evaluated the conflicting opinions of the consulting and treating sources of record. While plaintiff argues that the ALJ failed to point to contradictory medical evidence on the record to discredit Mr. Gigliotti's opinions and that the ALJ attempted to discredit his reports by referencing piecemeal segments of the record, the decision of the ALJ shows that substantial evidence supports the ALJ's decision to credit the weight of the medical evidence of record and not accept Mr. Gigliotti's assessment of the degree of severity of plaintiff's impairments.

### *II. Whether the ALJ erred in discrediting plaintiff's subjective testimony*

Plaintiff argues that the ALJ erred in discrediting plaintiff's subjective testimony

---

[4]As explained in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994):

> The reporting of overall functioning … is done using the Global Assessment of Functioning (GAF) Scale. The GAF Scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning.… In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care.

Id. at 30. A GAF score in the 51 to 60 range indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id. at 34. A GAF score in the 61 to 70 range indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but such an individual is "generally functioning pretty well, has some meaningful interpersonal relationships." Id.

regarding the extent of her limitations. The Commissioner responds that substantial evidence supports the ALJ's determination that plaintiff's subjective complaints were not entirely credible. Specifically, the Commissioner argues that the ALJ found plaintiff's subjective complaints not entirely credible for legally sufficient reasons, namely that: (1) they were not supported by the opinions of treating and examining psychologists and physicians, including Drs. Sessoms, Tydze, and Wilson; (2) they were not supported by the opinion of Dr. Link, the state agency psychological consultant; and (3) they were inconsistent with plaintiff's activities of daily living.

While the evidence of record is not entirely inconsistent with plaintiff's subjective complaints, there is substantial evidence that supports the ALJ's finding that plaintiff's allegations of her limitations were not fully credible. The ALJ, consistent with the opinions and records of the treating and examining psychologists and physicians summarized above, found that plaintiff's allegations that she is totally precluded from work-related activities by her mental impairments to be not fully credible. The court, upon a comprehensive review of the record medical evidence, agrees.

### III. *Whether the ALJ failed to incorporate all of plaintiff's credible limitations in the hypothetical posed to the vocational expert.*

Upon concluding that substantial evidence supports the ALJ's findings with respect to the demonstrated residual functional capacity of plaintiff, the court determines that the ALJ posed a hypothetical question to the vocational expert that accurately reflected plaintiff's functional limitations. A vocational's expert's "testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the

question accurately portrays the claimant's individual physical and mental impairments." Burns, 312 F.3d at 123 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). A hypothetical question posed to a vocational expert must include all of a claimant's impairments that are supported in the record. Id. A hypothetical question, however, need reflect only those impairments that are supported by the record. Id. Here, the ALJ posed a hypothetical question that incorporated plaintiff's limitations that were supported by the record. In so doing, the ALJ asked the vocational expert to assume plaintiff would be limited to work involving simple, repetitive tasks with no more than incidental interaction with the public. (R. at 59.) The ALJ further limited the hypothetical by precluding high-stress work activity, which the ALJ defined as work involving high production quotas or close attention to quality production standards. Id. The ALJ further limited the terms of the hypothetical by requiring that the work be limited to a routine work setting with routine work processes which did not require any team-type activities. Id. This hypothetical accurately reflected plaintiff's limitations that were supported by substantial evidence in the record.

### *Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that substantial evidence supports the ALJ's finding that the plaintiff is not disabled. The decision of the ALJ denying plaintiff's application for SSI and DIB is affirmed.

Therefore, plaintiff's motion for summary judgment (Docket No. 7) is **DENIED**, and defendant's motion for summary judgment (Docket No. 9) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Susan Garty.

The clerk shall mark this case as closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated:     March 24, 2006

cc:        Counsel of Record